IN THE UNITED STATES DISTRICT COURT    FILED
FOR THE NORTHERN DISTRICT OF ALABAMA APR 25 PM 3 ⁱ·ⁱ
SOUTHERN DIVISION    Uᵗ .-.· ⁻.: ⁻ ⁻ CCURT
    ᴺ D UF ALABAMA

JAMES W. SCOTT,                    )
                                   )
            Plaintiff              )
                                   )
    vs.                            )    CASE NO. CV00-HGD-0201-S
                                   )
WILLIAM J. HENDERSON,              )
UNITED STATES POSTAL SERVICE,      )
                                   )    **ENTERED**
            Defendant              )
                                        APR 2 5 2001.

## MEMORANDUM OPINION

This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.  Plaintiff, James W. Scott, alleges that in 1995, the United States Postal Service (USPS) failed to re-employ him because of his race and physical disability, and in retaliation for a complaint filed by him with the Equal Employment Opportunity Commission (EEOC) in 1991.

Plaintiff states that he stopped working for the USPS in 1991, after being terminated because of an injury.  He states that, in 1995, after he took a "battery test" and passed, the USPS wrote him that he was being screened for a job at the Fairfield, Alabama, post office.  However, according to plaintiff's complaint, after the USPS reviewed his records and found his 1991 EEOC complaint, he was disqualified by USPS employee James Helton on July 5, 1995, and removed from the register.

Defendant, in answer, avers that there were legitimate, non-discriminatory reasons for taking the personnel actions which are the subject of plaintiff's complaint. Defendant denies that plaintiff was terminated for an injury and denies that plaintiff was denied reinstatement because of his prior complaint or for any discriminatory reason. While denying any acts of discrimination or retaliation, defendant acknowledges that plaintiff was sent a letter dated June 30, 1995, from the Alabama District Office of the USPS located in Birmingham, advising him that his request for reinstatement was denied.

Defendant has filed a motion for summary judgment, asserting that plaintiff has failed to make out a case of discrimination based on race, disability, or reprisal and also cannot rebut the legitimate, nondiscriminatory reasons of the USPS for not reinstating plaintiff.

FACTUAL BACKGROUND

On March 1, 1995, plaintiff, a former USPS employee, sent a letter requesting reinstatement as a USPS employee. In that letter, Scott stated that he had worked for the USPS for six years as a carrier until he was disabled by an injury in 1990. He stated that, because his injury could not be accommodated at that time, he was terminated. However, he asserted that his medical condition had improved considerably and was willing to provide proof of this fact.

Mr. James Helton, Manager of Personnel Services for the Alabama District of the USPS, states in his affidavit [Doc. #10] that he is responsible for reinstatement decisions and that he denied plaintiff reinstatement on June 30, 1995, "after carefully considering the June 12, 1991, letter of decision removing Mr. Scott from Postal Service employment." He states that this

2

document revealed that plaintiff was an unsuitable candidate for re-employment. According to

Helton, Mr. Scott was informed, during orientation when previously hired, that all accidents

must be reported immediately to one's immediate supervisor, but he delayed in reporting an

alleged accident for over two months. Helton asserted that he also relied on a section of the

1991 letter of decision stating that plaintiff had expressed an aversion to carrying the mail; that

he had rejected his physician's recommendation for further treatment to allow him to perform

his carrier duties; and that he informed his physician that he was only concerned with changing

his job. Helton stated that, in reaching his decision to deny reinstatement, he did not consider

plaintiff's race, claimed disability or prior protected activity. According to Helton, he was not

aware of plaintiff's race nor aware that plaintiff had filed an EEOC complaint in 1991 until after

plaintiff filed his 1995 complaint regarding the denial of his reinstatement request.

The 1991 letter of decision terminating plaintiff states in part:

> A basic requirement of continued employment is the physical
> ability to perform the duties for which hired. It is obvious, based
> on the written data furnished by you from your physician and data
> furnished from a physician the agency appointed to examine you
> with a fitness for duty examination, that you are unable to perform
> even the basic duties of a City Letter Carrier. Furthermore, a
> review of the medical data and other correspondence you have
> submitted during the period leading to this decision makes it
> obvious that you are physically unable to perform duties in other
> crafts, assuming, of course, you met the requirements for transfer.
> . . . . . .
> It is truly unfortunate that some people are simply physically
> unable to perform certain types of work. Obviously, you are in
> this category.

[Doc. #10, Attachment 2, USPS Letter of Decision to J. W. Scott dated June 12, 1991].

3

Despite the language in the 1991 letter, Helton also states that he did not think plaintiff was disabled because Scott had stated in his reinstatement request that he was physically able to perform the job duties.  He stated also that over the years he had denied numerous reinstatement requests based on the requestor's unacceptable performance.  [Doc. #10]. Documents submitted by defendant reflect letters refusing reinstatement to six other former USPS employees based on unacceptable prior performance.  [Doc. #9, Attachment 6].  Of these six individuals, two were white and six were black.  [Doc. #9, Attachment 7].

## DISCUSSION

Summary judgment is appropriate only when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).  All the evidence must be viewed and all reasonable factual inferences must be drawn in favor of the non-movant. *See Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998).  The plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1989).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

## Race Discrimination Claim

In order to prove disparate treatment in violation of Title VII, the plaintiff must prove by a preponderance of the evidence a *prima facie* case of employment discrimination.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *Chaney v. Southern Railway Co.*, 847 F.2d 718, 722 (11th Cir. 1988). A *prima facie* case raises the inference that discriminatory intent motivated the challenged action against the employee.  The employer may rebut the presumption of discrimination by "clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for the discharge."  *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985).  "The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant raises a genuine issue of fact as to whether it discriminated

5

against the plaintiff." *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094-95. *See Chaney*, 847 F.2d

at 722; *Griffin v. Carlin*, 755 F.2d 1516, 1526 (11th Cir. 1985). If he is to prevail, the plaintiff

then must establish that the employer's articulated reason was a pretext for discrimination. *See*

*Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp.*, 411 U.S. 792, 804, 93

S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Chaney*, 847 F.2d at 722; *Conner*, 761 F.2d at 1499.

Throughout the proceeding, the plaintiff retains the ultimate burden of proving by a

preponderance of the evidence the existence of purposeful discrimination. *United States Postal*

*Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403

(1983). *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984)

("The 'ultimate question' in a disparate treatment case is not whether the plaintiff established

a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally

discriminated against the plaintiff.'") (quoting *Aikens*, 460 U.S. at 714-15, 103 S.Ct. at 1481-82).

Title VII provides in relevant part:

> (a) It shall be an unlawful employment practice for an employer--
>     (1) to fail or refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, or national
> origin . . . .

42 U.S.C. § 2000e-2 (1981). Likewise, 42 U.S.C. § 2000e-16(a) states:

> § 2000e-16.   **Nondiscrimination in Federal Government**
> **Employment**
>
> (a) Discrimination prohibited. All personnel actions affecting
> employees or applicants for employment (except with regard to
> aliens employed outside the limits of the United States) in military
> departments as defined in section 102 of title 5, United States

6

> Code, in executive agencies as defined in section 105 of title 5,
> United States Code (including employees and applicants for
> employment who are paid from nonappropriated funds), in the
> United States Postal Service and the Postal Rate Commission, in
> those units of the Government of the District of Columbia having
> positions in the competitive service, and in those units of the
> judicial branch of the Federal Government having positions in the
> competitive service, in the Smithsonian Institution, and in the
> Government Printing Office, the General Accounting Office, and
> the Library of Congress shall be made free from any discrimination
> based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a).

The guidelines for deciding a case such as this are set out in *McDonnell Douglas v. Green,*

*supra,* and *Texas Department of Community Affairs v. Burdine, supra*:

> First, the plaintiff has the burden of proving by the preponderance
> of the evidence a *prima facie* case of discrimination. Second, if the
> plaintiff succeeds in proving the prima facie case, the burden
> shifts to the defendant "to articulate some legitimate,
> non-discriminatory reason for the employee's rejection." Third,
> should the defendant carry this burden, the plaintiff must then
> have an opportunity to prove by a preponderance of the evidence
> that the legitimate reasons offered by the defendant were not its
> true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252-53, 101 S.Ct. at 1093. A plaintiff establishes a *prima facie* case of

racial discrimination when he establishes that he is a member of a racial minority and that he

was treated differently from similarly situated non-minority members. *See McDonnell Douglas,*

411 U.S. at 802, 93 S.Ct. at 1824; *Morrison v. Booth,* 763 F.2d 1366 (11th Cir. 1985).

For purposes of summary judgment, the parties apparently agree that plaintiff is a

member of a protected class and that he was qualified to do the job for which he applied. To

establish a *prima facie* case, plaintiff must show that there were employees, not within his

7

protected class, who were similarly situated in all relevant respects, but who were treated more favorably. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998), *cert. denied*, 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). In determining whether employees were similarly situated and more favorably treated, this court must consider whether the employees were treated in the same way as plaintiff. The adequacy of the comparators is crucial. *Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

Here, plaintiff has not shown that there were similarly-situated employees who were treated differently than he was. The records submitted by defendant do not reflect disparate treatment based on race and plaintiff, when asked, was unable to identify any applicants who were seeking reinstatement who were treated differently than he was. [Doc. #8, Scott Depo. at 54].

In addition, Mr. Helton has testified in his affidavit that he was unaware of plaintiff's race at the time he made the decision not to reinstate him, and plaintiff has presented no evidence to the contrary. Though plaintiff asserts that his personnel file included evidence of his race, and has admitted that he has a copy of it, he has not presented this evidence to the court. [*See* Doc. #8, Scott Depo. at 71-72].

Because plaintiff cannot show there was a similarly situated, non-protected employee who was treated differently than plaintiff and has not produced any other evidence of discrimination, the court concludes that plaintiff has failed to make out a *prima facie* case of

8

race discrimination, and summary judgment is appropriate as to this claim. *Holifield v. Reno*, 115 F.3d at 1562.


**Retaliation Claim**

Plaintiff asserts also that he was denied reinstatement in retaliation for having filed an EEOC complaint against the USPS in 1991. Title 42 U.S.C. § 2000e-3(a) prohibits discrimination by an employer against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. This provision is applicable to federal employees. *See* 42 U.S.C. § 2000e-16.

The order of proof to establish a claim of retaliation, like one for discrimination, is governed by *McDonnell-Douglas Corp. v. Green, supra.* To support a claim of retaliation, plaintiff must present evidence to show that (1) he engaged in statutorily-protected expression; (2) thereafter, he was the subject of an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998) (citation omitted). The causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

Mr. Helton has testified that, at the time he denied plaintiff reinstatement, he had no recollection of plaintiff's 1991 EEOC complaint. Mr. Helton was not involved in plaintiff's prior

9

EEOC proceeding.  [Doc. #10, Helton Declaration at ¶6; Doc. #8, Scott Depo. at 37].  Mr. Scott stated that he had no other evidence indicating that the USPS employees involved in the denial of his reinstatement were involved in his prior EEOC complaint.  [Doc. #8, Scott Depo. at 48].  Mr. Scott testified that he believed that Mr. Helton had knowledge of his prior EEOC activity based on (1) "common sense;" (2) because his prior case was "pretty well-known around the Postal Service;" and (3) because he did some light duty work in the Human Resources Office.  [*Id.* at 33-39].  However, plaintiff admitted that he had no actual knowledge as to what records Mr. Helton reviewed before denying reinstatement to him [*id.* at 34], or knowledge of whether Mr. Helton was even in the Human Resources Office when plaintiff did light duty.  [*Id.* at 38].  There is no evidence that Mr. Helton ever reviewed plaintiff's EEOC file and, though plaintiff has admitted that he has a copy of the personnel file reviewed by Mr. Helton, plaintiff has presented no evidence to the court indicating that it contains any information about his 1991 EEOC complaint.  [*See id.* at 71-72].

Furthermore, Mr. Scott's prior EEOC activity occurred in 1991, approximately four years prior to Mr. Helton's decision not to reinstate him.  Without more, this gap is much too long to support an inference of retaliation.  *See Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (gap of more than 15 months judged too long a temporal gap), citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993) (nine-month gap between protected activity and adverse employment action precluded reasonable inference of causation); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (13-month delay between protected activity and termination too long for causation to be established); *Conner v. Schnuck*

10

*Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month lag between protected activity

and termination not sufficient to justify an inference of causation).

Under these circumstances, the court concludes that plaintiff has failed to make out a

*prima facie* case of retaliation, and summary judgment is appropriate as to this claim.


**Disability Discrimination Claim**

Plaintiff asserts that Mr. Helton's refusal to reinstate him also was based on his prior

disability, no longer in existence, which caused his termination in 1991.  For an employee of

the USPS, the claim is covered by the Rehabilitation Act.  In pertinent part, that Act reads:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 7(20) [29 USCS § 706(20)], shall,
> solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal
> financial assistance or under any program or activity conducted by
> any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.   In order to establish a *prima facie* case of discrimination under the

Rehabilitation Act, an individual must show that (1) he has a disability; (2) he is otherwise

qualified for the position; and (3) he was subjected to unlawful discrimination as the result of

his disability.  *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999), citing *Gordon v. E.L.*

*Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996); *Severino v. North Fort Myers Fire*

*Control Dist.*, 935 F.2d 1179, 1183 (11th Cir. 1991).

In 1995, the Rehabilitation Act defined "individual with a disability" as any person who:

> (i) has a physical or mental impairment which substantially limits
> one or more of such person's major life activities, (ii) has a record

11

of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B).[1]

One definition of being "regarded" as having an impairment is if a person has no physical or mental impairment but is treated by the employer as if he has such an impairment. *See* 29 C.F.R. § 1614.203(a)(5). In addition, a person "[h]as a record of such an impairment" if he or she "has a history of, or has been classified (or misclassified) as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1614.203(a)(4).

Plaintiff, by his own admission, was not disabled at the time he was denied reinstatement. However, a fair reading of his complaint reflects that he is alleging that he has a record of such impairment or was regarded by Mr. Helton as having such an impairment, and that he was not rehired for either or both of these reasons. Although plaintiff does not expressly identify the major life activity that is regarded by the USPS as substantially limited, it appears that it is his ability to perform physical labor in general, and specifically, as a postal service letter carrier.[2] Even assuming this to be true, Scott must still show that his (perceived) inability to work as a postal worker is a "disability" under the Rehabilitation Act.

When referring to the major life activity of working, the EEOC defines "substantially limit[ed]" as "significantly restricted in the ability to perform either a class of jobs or a broad

---

[1] The definitions under this Act were amended in 1998 and moved to 29 U.S.C. § 705.

[2] The June 12, 1991, letter terminating plaintiff's employment with the USPS contains the statement "It is truly unfortunate that some people are simply unable to perform certain types of work. Obviously you are in this category." [Doc. #10, Attachment 2]

range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630(j)(3)(i) (1998).

Under the Rehabilitation Act, a physical impairment does not "substantially limit" the major life activity of working merely because it precludes the performance of one particular job. 29 C.F.R. § 1630.2(j)(3)(i) (1998).  The EEOC identifies several factors that courts may consider when determining whether an individual is substantially limited in the major life activity of working, including "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the] geographical area [reasonably accessible to the individual], from which the individual is also disqualified." 29 C.F.R. § 1630(j)(3)(ii)(B).  Thus, the impairment must significantly restrict "the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318 (11th Cir. 1998).

To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If other jobs utilizing an individual's skills are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491-92, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999) (further noting that the court "should" consider these factors, in contrast to the regulation's instruction that these factors "may" be considered).

Even assuming Helton refused to reinstate Scott because Helton believed Scott could not perform postal service duties, a lack of physical ability to perform the duties of a postal service

13

employee is not evidence that plaintiff cannot perform a particular class of jobs requiring some physical ability. *See, e.g., Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1119 (D.C.Cir. 2001) (concurring opinion) (plaintiff not suffering from ADA-recognized disability when the evidence presented showed only that he was unable to do the heavy lifting required for a particular job but presented no evidence that he could not handle the broader class of jobs requiring manual labor, of which heavy lifting is but a subclass); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 614 (5th Cir. 2001) (an inability to engage in the kind of intense physical exertion required of some jobs is not evidence that a plaintiff is disqualified from all jobs involving manual labor). Therefore, plaintiff has failed to show that his 1990 injury was a "disability" under the Rehabilitation Act for purposes of "perceived" disability, as an impairment that significantly restricted his ability to perform a class of jobs, and Helton's refusal to reinstate him based on this perceived impairment does not violate the Rehabilitation Act.

Furthermore, plaintiff states in his opposition to defendant's motion for summary judgment that, subsequent to his termination from the USPS in 1991, he returned to college and is now a teacher in the Birmingham City School system. [Doc. #12 at ¶12]. Since it is clear from this fact that jobs utilizing plaintiff's skills are available, he is not precluded from a broad range of jobs and, thus, has not shown that he is substantially limited in the major life activity of working. Therefore, plaintiff has failed to make a *prima facie* showing that defendant has violated the Rehabilitation Act, and defendant's motion for summary judgment as to this claim is due to be granted.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this __25th__ day of April, 2001.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

15